# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 4825 | **DATE** | 11/25/2002 |
| **CASE TITLE** | Paul Knox vs. Marjorie Donahue, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendants Smith and Walker's joint motion for summary judgment is granted in part and denied in part. (31-1)

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | **Document Number** |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | NOV 2 6 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | **39** |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | NOV 2 6 2002 | |
| | | courtroom deputy's initials | date mailed notice | |
| | SN | | | mailing deputy initials |

U.S. DISTRICT COURT
CLERK
02 NOV 25 PM 3: 37

10 ED-ED

Date/time received in central Clerk's Office

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PAUL KNOX,                          )
                                    )
            Plaintiff,              )
                                    )
    v.                              )      No.  00 C 4825
                                    )
MARJORIE DONAHUE, et al.,           )
                                    )
            Defendants.             )

MEMORANDUM OPINION AND ORDER

Paul Knox ("Knox") initially filed this 42 U.S.C. §1983

("Section 1983") action against six Illinois Department of

Corrections ("Department") employees: Parole Agent Deborah Smith

("Smith"), Community Service Department Supervisor Melvin Walker

("Walker"), Field Services Officer Sena Landreth ("Landreth"),

Department Director Donald Snyder, Jr. ("Snyder"), Community

Services Department Deputy Director George DeTella ("DeTella")

and Department legal counsel Kent Steinkamp ("Steinkamp").  Knox

charges that he was deprived of his constitutional rights under

the Fourth[1] and Fourteenth Amendments when on two separate

occasions he was arrested and detained for violating the

conditions of his mandatory supervised release without probable

cause.

---

    [1]  As always, this opinion adheres to the conventional and
convenient (though technically imprecise) practice of referring
to the underlying Bill of Rights provision (which of course
imposes limitations only on the federal government) rather than
to the Fourteenth Amendment (which applies to state actors and
has been construed to embody such Bill of Rights guarantees).

This Court's April 4, 2001 oral order held that Landreth, Steinkamp and Snyder lacked the requisite personal involvement in the alleged deprivations and dismissed Knox's claims against those defendants. That left Smith, Walker and DeTella, who have now filed a joint Fed. R. Civ. P. ("Rule") 56 summary judgment motion, pursuant to which both sides have complied with this District Court's LR 56.1.[2]

K. Mem. 7 n.4 says Knox has decided not to pursue his claims against DeTella because discovery has revealed that DeTella also had no personal involvement in Knox's arrests (see <u>Whitford v. Boglino</u>, 63 F.3d 527, 530-31 (7th Cir. 1995)(per curiam)). Knox's claim against DeTella is therefore also dismissed. As for the joint Smith-Walker motion, for the reasons set out here it is granted in part and denied in part.

## Summary Judgment Standards

Familiar Rule 56 principles impose on parties moving for summary judgment the burden of establishing the lack of a genuine

---

[2] LR 56.1 is designed to facilitate the resolution of Rule 56 motions by calling for evidentiary statements and responses (in each instance with record citations), thus highlighting the existence or nonexistence of factual disputes. This opinion cites to the Smith-Walker LR 56.1(a)(3) statement as "S-W. St. ¶ --" and to Knox's LR 56.1(b)(3)(B) responsive statement of additional facts as "K. St. ¶ --." Knox's response to the S-W. St. is cited as "K. Resp. St. ¶ --," although where a S-W. St. assertion is not contradicted a citation to it alone ordinarily suffices. "S-W. R. St. ¶ --" designates Smith-Walker's Reply Statement. This opinion employs the same "S-W." and "K." abbreviations in referring to the parties' exhibits and memoranda.

issue of material fact (<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986)). For that purpose this Court must "consider the evidentiary record in the light most favorable to the non-moving party...and draw all reasonable inferences in his favor" (<u>Lesch v. Crown Cork & Seal Co.</u>, 282 F.3d 467, 471 (7th Cir. 2002)). And <u>Pugh v. City of Attica</u>, 259 F.3d 619, 625 (7th Cir. 2001) has echoed the teaching of <u>Anderson v. Liberty Lobby Inc.</u>, 477 U.S. 242, 248 (1986):

> A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

As with any summary judgment motion, this Court accepts nonmovant Knox's version of any disputed facts, but only so long as it is supported by record evidence. What follows in the <u>Background</u> section is culled from the parties' submissions in those terms.

## Background

Over the past 20 years Knox has been in and out of Department custody for a variety of offenses, including a 1976 conviction for two counts of rape (S-W. St. ¶8). After Knox had completed the sentences for his earlier convictions, in 1999 he was serving a one year sentence for possession of controlled substances.[3] In the spring of 1999 plans were made to place him

---

[3] Because all of the operative events took place during 1999, no year designation need be included in referring to those dates.

on mandatory supervised release (also called "parole")(id. ¶9; S-W. Ex. G)--a status that required him to remain under intensive supervision and to reside at a host site with his brother and ailing mother in Robbins, Illinois (S-W. St. ¶10).

On two separate occasions during the period of that parole arrangement, a warrant was issued and Knox was arrested for violating conditions of his release. Because Knox claims that both of those arrests violated his Fourth Amendment right to be free from unreasonable seizure, this opinion examines each episode and its ensuing arrest in some detail.

On April 1 Knox signed a Parole or Mandatory Release Agreement ("Agreement") that, among other conditions, required that he comply with the instructions of his parole agent (S-W. St. ¶¶11-12). Knox also signed a reporting instruction form stating that he was required to register as a sex offender, but he did not sign the Electronic Home Detention Rules form or the Illinois Sex Offender Registration Act form (id. ¶13). On April 2 Knox was released on parole (id. ¶21).

That afternoon Smith, assigned as Knox's parole agent, met with Knox at the host site (S-W. St. ¶21). Because Knox was living in an apartment adjacent to his brother's apartment and did not have regular access to a telephone as required for home monitoring, Smith instructed him to call the toll free number for

4

Automated Management Systems ("AMS")[4] from a nearby pay phone every two hours (id. ¶23). According to Smith, she also requested that he register as a sex offender and gave him a window of time within which to do so (id.). Knox disputes the latter, stating that Smith instructed him to remain home and gave him permission to leave only to use the pay phone to call AMS (K. St. ¶6).

During that host site visit Smith called AMS, and the AMS record reflects her instructions to Knox to call in. But neither the AMS record nor Smith's violation report mentions that she gave Knox permission to leave home to register (K. St. ¶7). Because Smith told AMS that Knox did not have access to a telephone, a technician was not sent to his home to hook up the electronic monitoring system (S-W. R. St. ¶14).

As recorded by AMS, Knox called in at 8:13 p.m. and 11 p.m. on April 2, but he did not check in again until 2:32 p.m. the following day (S-W. St. ¶25). During that morning lapse AMS paged Smith, who then requested that a warrant be issued for Knox as a parole violator (id. ¶¶26-28). Smith's violation report

_____

[4] AMS is a messaging service that has contracted with Department to monitor, record and document calls from parolees and parole agents (S-W. St. ¶¶16-17). According to Walker's testimony, the AMS record replaced paper filings as the main record for all interactions between parole agents and parolees (S-W. Ex. D at 23). AMS was also charged with paging parole agents to notify them of problems with parolees such as a failure to check in with AMS as directed (S-W. St. ¶17).

says that Knox committed the offense of unauthorized movement or absence, noting that he did not check in as directed and that he failed to register as a sex offender. Smith's supervisor Walker issued a parole violator warrant on April 3 (id. ¶29).

Unaware of that warrant, Knox continued to call AMS approximately every two to four hours (S-W. Ex. J) until April 9, when the warrant was executed and Knox was retaken into Department's physical custody (S-W. St. ¶¶29-30). On May 3 Knox was notified of the charges against him and waived his preliminary hearing (id. ¶¶31-32). After a full revocation hearing, a May 11 Prisoner Review Board order declared that Knox had violated his mandatory supervised release but ordered that plans should be made for his continued parole (id. ¶33; S-W. Ex. L).

On May 28 Knox was again released on parole to the same host site. Knox signed an Agreement with the Board that contained the same conditions as his prior release and that also specifically required him to comply with the Sexual Offender Registration Act ("Act," 730 ILCS 150/1 to 150/12) and to attend sex offender counseling (S-W. St. ¶¶35-39). Again Knox signed his reporting instructions requiring that he go directly to his host site and call AMS, but once more he failed to sign the Electronic Home Detention Rules (id. ¶39).

Upon arriving at his host site on the night of May 28, Knox

called to check in with AMS. According to a call recorded by AMS, early the following morning a technician attempted to install the home monitoring electronic equipment at the host site, but Knox's mother and brother refused to allow the hookup because Knox would not be allowed access to that telephone (S-W. Ex. O at 25).

At 1 p.m. May 29 AMS paged Smith because Knox had not called in since the previous evening and attempts to reach him at the host site's telephone number had been rejected by Knox's brother, who said he did not know Knox's whereabouts (K. Resp. St. ¶46). Smith responded by asking AMS to page her supervisor to request that a warrant be issued on Knox (K. St. ¶19), and at 2 p.m. a warrant was issued for Knox as a parole violator (id. ¶22).

There is a disagreement as to the extent of interaction between Smith and Knox on May 29. Smith testifies that Knox was absent from the host site at the time of her initial visit on that day, but that she found him and did not report his unauthorized absence because he had not previously been notified that he would be on electronic home monitoring status (K. St. ¶23). Smith also states, and Knox himself seemingly confirms (S-W. R. St. ¶22), that she met with Knox at the host site on May 29 and told him to call AMS from the pay phone every two hours and to register as a sex offender (S-W. St. ¶42). Smith's violation report says that during that May 29 visit she learned that Knox

would not be allowed access to a telephone and issued the alternative call-in instructions (S-W. Ex. P). Smith's report goes on to assert that Knox violated his parole because he "absconded and failed to call as instructed" (id.). But the AMS report for that day has no record of Smith's visit to Knox on May 29 or of any instructions that she gave him at that time about calling AMS or registering as a sex offender (K. Resp. St. ¶41; K. St. ¶22).

On June 22 the May 29 parole violation warrant for Knox was executed, and he was then arrested and returned to prison (K. St. ¶21). After Knox was presented with a notice of his charges and waived his right to a preliminary hearing, on August 3 the Board found that Knox had not been in violation of his parole, and he was again released on parole (S-W. St. ¶¶51-53).

### Section 1983 Claims

Knox contends that his arrests on both April 9 and June 22 were unreasonable seizures in violation of the Fourth Amendment and that his confinement following each arrest deprived him of his liberty without due process of law in violation of the Fourteenth Amendment. Smith and Walker move for summary judgment on several grounds, urging that:

1. Knox's challenge to his April 9 arrest is precluded by Heck v. Humphrey, 512 U.S. 477 (1994).

2. Walker is absolutely immune from suit.

8

3. Both arrests were constitutional and protected by qualified immunity.

4. Knox received all of the process he was due under the Fourteenth Amendment.

Those arguments are addressed in turn.

Heck v. Humphrey

Under Heck, 512 U.S. at 486-87 a claim that necessarily implicates the invalidity of a plaintiff's conviction may not proceed under Section 1983 unless and until the conviction itself is invalidated. But Heck, id. at 487 n.7 expressly noted that bar would not extend to Section 1983 actions based on an allegedly unreasonable search under the Fourth Amendment that could succeed without necessarily implying that the plaintiff's later conviction was unlawful.

In light of that Heck footnote, our Court of Appeals has consistently held that the requirement of a prior favorable result does not apply to a Section 1983 claim for damages resulting from an unreasonable search or seizure, because such an alleged violation of the Fourth Amendment would not necessarily impugn the validity of a conviction (see, e.g., Copus v. City of Edgerton, 151 F.3d 646, 648-49 (7th Cir. 1998); Booker v. Ward, 94 F.3d 1052, 1056-57 (7th Cir. 1996)). As Booker, id. at 1056 explained, because "one can have a successful wrongful arrest claim and still have a perfectly valid conviction," such a claim

"would not necessarily undermine the validity of his conviction"
(id.).

Knox's claim that Smith did not have a reasonable basis to issue the parole violation warrant that led to his arrest is essentially analogous to the claim of wrongful arrest without probable cause addressed in Booker. As in Booker, such a claim can proceed independently of whether the Board's ultimate determination that Knox violated his parole may stand. Unlike the authority on which Smith and Walker rely, Knox's claim falls squarely in the category of cases to which Heck is inapplicable (Snodderly v. R.U.F.F. Drug Enforcement Task Force, 239 F.3d 892, 897 (7th Cir. 2001), explaining that Heck's requirement of favorable termination was "categorically" inapplicable "to all §1983 claims for false arrest").

Walker's Absolute Immunity

Walker next argues that he is absolutely immune from suit because of his limited involvement in issuing the parole violator warrants. Although accorded only for limited functions akin to judicial or prosecutorial acts, absolute immunity also cloaks a parole officer who is sued for "issu[ing] an arrest warrant against a parolee so long as [ ]he does not participate in gathering the evidence forming the basis of the warrant" (Copus, 151 F.3d at 649, citing Walrath v. United States, 35 F.3d 277,

10

282 (7th Cir. 1994))[5].

Here Walker performed an adjudicative function by making an independent determination to issue the warrant based on evidence provided by Smith. Although Walker was Smith's supervisor, Knox offers no evidence to show that Walker was directly involved in gathering evidence against Knox or otherwise personally investigated Knox's compliance with the conditions of his parole. Rather Walker's knowledge of the case came entirely from Smith, who prepared her report and discussed the case with Walker "in order to convince him that [Knox] had, in fact, violated his parole agreement and that a warrant should be issued" (K. St. ¶27). In short, Walker made a discretionary decision on the basis of information provided by Smith and is accordingly entitled to absolute immunity.[6]

---

[5] Unlike the employee in Walrath, Walker did not sign either of Knox's arrest warrants. But it is undisputed that Walker had to approve all arrest warrants issued for parolees assigned to the parole agents that he supervised and that he had the ultimate authority for making this decision (K. St. ¶26). As Buckley v. Fitzimmons, 509 U.S. 259, 269 (1993) has reconfirmed, we apply a functional approach to questions of absolute immunity, looking to "the nature of the function performed, not the identity of the actor who performed it."

[6] Even if Walker were not absolutely immune from liability, Knox has failed to show that Walker should be held liable for his role as Smith's supervisor. Under Section 1983 a supervisor is liable for the conduct of a subordinate that violates a plaintiff's constitutional rights only if the supervisor acted "either knowingly or with deliberate, reckless indifference" (Chavez v. Ill. State Police, 251 F.3d 612, 651 (7th Cir. 2001)). But Knox provides no evidence that Walker had any direct knowledge of Knox's situation or that he had reason to suspect

Both defendants next argue that their decisions to initiate Knox's arrests for violating his parole were protected by qualified immunity. Because Walker has already been insulated from suit in absolute immunity terms, what follows will focus on Smith alone.

Qualified immunity shields government officials performing discretionary functions from liability for civil damages. To overcome that defense Knox must show[7] that the officials violated "clearly established statutory or constitutional rights of which a reasonable person would have known" (<u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)). <u>Saucier v. Katz</u>, 533 U.S. 194, 201-02 (2001) teaches that a court conducting that inquiry must consider two questions in sequence:

> 1. whether the facts alleged, taken in the light most favorable to the injured party, show that the officer's

---

that Smith's report was materially false or incomplete and nevertheless willfully disregarded such a flaw.

[7] In the summary judgment context, of course, Knox's burden is only that of creating reasonable inferences, not one of proof as such (see <u>Anderson v. Baxter Healthcare Corp.</u>, 13 F.3d 1120, 1124 (7th Cir. 1994)). But any continued repetition of that burden involves an awkward locution, an awkwardness contributed to by the fact that so much of the caselaw speaks of what a party responding to a Rule 56 motion must "establish" or "prove" or "show." Whenever this opinion employs such terms, it should therefore be understood as denoting Knox's lesser burden of creating reasonable inferences, not the actual burden of persuasion.

conduct violated a constitutional right; and

    2.   if so, whether that right was so well established that it "would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."

To be sure, a parolee does not enjoy "the absolute liberty to which every citizen is entitled but only [a] conditional liberty properly dependent on observance of special parole restrictions" (Morrissey v. Brewer, 408 U.S. 471, 480 (1972)). Because of that conditional liberty, parolees are subject to greater scrutiny by state parole officials and are not entitled to the full range of constitutional protections afforded to criminal defendants (see Faheem-El v. Klincar, 841 F.2d 712, 720 (7th Cir. 1988)(en banc)). But it is also clear that a parolee retains at least some Fourth Amendment protection from unreasonable searches and seizures (Griffin v. Wisconsin, 483 U.S. 868, 873 (1987), holding that the search of a probationer's home was subject to review under the Fourth Amendment's reasonableness standard).[8]

Despite Knox's status as a parolee, then, the Fourth Amendment applies to each of his arrests, mandating consideration of whether these seizures were reasonable. For each incident

---

    [8]  Arguably parolees may be entitled to even less protection than probationers (see United States v. Cardona, 903 F.2d 60, 63 (1st Cir. 1990)). Even so, parolees like probationers retain a status of conditional liberty warranting at least some Fourth Amendment protection (see Griffin, 483 U.S. at 874).

Knox argues that Smith did not have a reasonable basis to conclude that he had violated his parole when she requested the warrant leading to his arrest, because she did not give him a reasonable opportunity to comply with his parole requirements and she failed to follow established procedures.

In reliance on the reasoning in Franks v. Delaware, 438 U.S. 154, 155-56 (1978), our Court of Appeals has held that a police officer is liable under Section 1983 for violating the Fourth Amendment if he seeks an arrest warrant (1) solely on the basis of "statements he knew to be false or would have known were false had he not recklessly disregarded the truth" (Olson v. Tyler, 771 F.2d 277, 281 (7th Cir. 1985)) or (2) "through the intentional or reckless omission of material facts" that would negate probable cause (id. at 281 n.5; see also Olson v. Tyler, 825 F.2d 1116, 1118 (7th Cir. 1987)).[9] To analogize Olson to this case,[10] Knox must raise a reasonable inference that Smith acted unreasonably by either knowingly or recklessly disregarding the truth when she requested the warrants that led to Knox's arrests for violating

_____

[9] All further references to Olson in this opinion are to the 1985 decision cited in the text.

[10] While Olson dealt with a police officer's affidavit submitted to seek a criminal arrest warrant, the parole agent who files a violation report and seeks a parole violator warrant is in an analogous position for current purposes. Certainly a parole agent enjoys no more freedom than a police officer to lie knowingly, or willfully to ignore the truth, in her efforts to persuade the decisionmaker to issue a warrant.

14

his parole. This opinion turns to the circumstances of each arrest in those terms.

As to the April 9 arrest, it has already been stated that on April 3 (a day after Knox's release) Smith had filed a violation report and had asked that a warrant be issued because Knox had failed to call in according to her instructions and because he had not registered as a sex offender. Knox does not dispute that Smith had instructed him to call AMS every two hours or that he failed to do so on the morning of April 3. Additionally, the AMS report for that period is uncontroverted evidence of both her instructions and his infraction.

Knox contends instead that Smith failed to follow the required procedures in implementing the conditions of his parole. But that assertion is not supported by the evidence. Although Smith did not communicate with the Placement Resource Unit when she realized that Knox would not have access to a telephone, she did not issue a warrant on that basis but instead established an alternative procedure for calling in that was neither unfair nor unreasonable.

Knox also argues that he did not have a reasonable opportunity to comply with the conditions of his parole. Though his evidence on that point is somewhat more persuasive, it too cannot rescue his claim. In particular, Knox asserts that he was

not given a real opportunity to register as a sex offender.[11]
Disputing Smith's testimony that she gave him permission to
register as a sex offender, Knox states that Smith instructed him
to leave his house on April 3 only for the purpose of calling
AMS. In addition, the AMS record that documents her instructions
about calling AMS contains no mention of her directions for
registering.

That being the case, Knox's version must be credited--and
that in turn may create a reasonable inference that Smith's
request for the warrant on the basis of Knox's failure to
register was deliberately or recklessly unfounded. But that
would not be enough to save his claim under Olson, because Smith
had the requisite probable cause to request the warrant based on
his failure to comply with her AMS instructions. Even if Knox

---

[11] Alternatively, Knox argues that the registration
condition was itself invalid because the Act was not
constitutionally applied to him. According to his complaint,
Knox had fully completed his sentence for his 1976 rape
convictions by 1996, when the Act as it would apply to him was
adopted. In that respect People v. Malchow, 193 Ill. 2d 413, 739
N.E.2d 433 (2000) has upheld the Act as constitutional because
its registration requirements do not constitute additional
punishment, so that its provisions can be applied retroactively.
In terms of the United States Constitution, however, our Court of
Appeals has not spoken to the issue, while the United States
Supreme Court now has the validity of Alaska's similar statute
before it (Smith v. Doe, Dkt. No. 01-729, argued Nov. 13, 2002,
on cert. from Doe v. Otte, 259 F.3d 979 (9th Cir. 2001)). Under
the circumstances, this Court will eschew any decision on the
subject, for as explained in the text, Smith had sufficient
independent grounds on April 3 to request a warrant based on
Knox's failure to comply with her instructions.

could not possibly have registered before the warrant was issued, that does not undo the fact that he had separately violated his parole by failing to call in as directed.

To be sure, Knox's failure to call on the morning of April 3 is a relatively minor and somewhat technical infraction. But under Illinois law (see 730 ILCS 5/3-3-7(a)(15)) Knox's April mandatory release agreement required that he comply with the instructions of his parole agent as a condition of his release. Moreover, Walker testified that parole agents are authorized to request, and that he is authorized to issue, warrants for any technical violation (S-W. R. St. ¶15). Thus Knox's admitted failure to comply with Smith's instructions was a reasonable basis for Smith to seek a parole violator warrant, and the resulting April 9 arrest was not an unreasonable seizure in violation of the Fourth Amendment.

But as the Background section of this opinion has indicated, the circumstances that led to Knox's second challenged parole violation arrest on June 22 are less clear. Fifteen hours after Knox first arrived at his host site and checked in with AMS at 10:26 p.m. on May 28, Smith had AMS page her supervisor to request a parole violation warrant. According to Smith's violation report, she requested the warrant because Knox had failed to comply with her May 29 instructions to call AMS every two hours from a pay phone.

17

Knox urges that Smith knowingly or recklessly disregarded the truth in her May 29 report recommending his arrest. He asserts that she had no reasonable basis for seeking the warrant because she did not give him an adequate opportunity to comply with the conditions of his parole and she failed to follow the required parole procedures. Knox supports that position with two arguments. First, he asserts that a genuine issue of material fact exists as to whether Smith visited Knox on May 29. Second, he disputes that Knox's failure to call AMS per her instructions was the reason that Smith requested the May 29 warrant.

To be sure, Smith testified that she visited Knox on May 29 and instructed him to call in to AMS bi-hourly. Her violation report conforms to that account and lists Knox's failure to comply as the basis for requesting the warrant. Moreover, although Knox's testimony reflects considerable confusion over the circumstances and conditions attending each of the many times he has been on parole, he does state in places that Smith visited him after he was released on May 28 and required him to call in every two hours.[12]

---

[12] Knox's testimony on these points is far from definite. Discussing his May release, he said he believed that Smith visited him on the day he was released (S-W. Ex. B at 57). Although that was true for his April 2 release, Smith allegedly visited him the day after he was released in May. Knox is also confused about whether at that time he was told to call in to AMS or was supposed to report in person to his parole agent (id. at 61-63).

18

Against that evidence, Knox points out that, in contrast to the April visit (S-W. Ex. J at 4-5), the later AMS report does not state that Smith visited Knox on May 29, nor does it contain any mention of her instructions to call in every two hours. That report does reflect, however, that at 1:14 p.m. on May 29 Smith responded to an AMS page advising her that Knox's host had been rude and belligerent. And Smith stated on that record that Knox should not have been released to that host site and that this was the second time it happened, so she requested that a warrant be issued (S-W. Ex. O at 27).

It is uncontested that the AMS report provides key documentation of a parolee's case and is supposed to reflect all activity pertaining to a parolee, including visits from the agent. Walker testified that "AMS records everything that happens in the case" and that "when people involved in a specific case had information...about the case, they had instructions to call it in to AMS" (S-W. Ex. D at 23).

At a minimum, then, the absence of an AMS record creates a reasonable inference that Smith's testimony (1) about visiting with Knox and (2) about the additional conditions of his parole that she assertedly put into effect and then charged him with violating is not to be credited. Moreover, the existing AMS report suggests that Smith's request for the warrant was based not on Knox's failure to call in according to those claimed

instructions or any other alleged non-compliance, but rather on the difficulty in finding an appropriate placement for him.

When all reasonable inferences are combined and drawn in Knox's favor, it cannot be said as a matter of law that a reasonable jury would go awry in concluding that Smith's misconduct was deliberate--that she either knowingly lied or recklessly disregarded the truth in her violation report (as to that standard, see, e.g., the reading of <u>Olson</u> in <u>Senger v. Jordan</u>, No. 85 C 6493, 1989 WL 36225, at *4 (N.D. Ill. April 10)). Smith's report contains no information other than Knox's failure to call in that would constitute sufficient cause for the parole violation warrant. In sum, under <u>Olson</u> Knox has raised a reasonable inference that Smith did not have a reasonable basis for requesting the warrant, so that his later arrest on June 22 violated his Fourth Amendment right against unreasonable seizure.

That leads to the second question posed by <u>Saucier</u>: whether Smith is entitled to qualified immunity for her actions. On that score <u>Olson</u>, 771 F.2d at 281 (citations to <u>Franks</u>, 438 U.S. at 164-65 omitted) calls for a "no" answer:

> It is clearly established that the fourth amendment requires a truthful factual showing sufficient to constitute probable cause....An officer's conduct in preparing a warrant affidavit that contains only inaccurate statements that are untruthful as that term is defined in <u>Franks</u> violates the arrestee's fourth amendment rights. In such a case, a reasonably well-trained police officer would have known that the arrest was illegal.

That Smith was a parole agent filing a violation report, rather than a police office submitting an affidavit, makes no difference (see Scotto v. Almenas, 143 F.3d 105, 113 (2ᵈ Cir. 1998); Giarruso v. City of Chicago, 539 F. Supp. 690, 696 (N.D. Ill. 1982); Senger, 1996 WL 36225, at *4). No reasonable parole officer could disagree that it is unlawful to request a parole violation warrant based on evidence that is known to be false or recklessly inaccurate.

## Due Process Claim

Lastly, Knox's claim that his arrests violated his right to fundamental fairness under the Fourteenth Amendment's Due Process Clause can be disposed of in short order. Morrissey, 408 U.S. at 485-89 established that due process in the parole revocation context is satisfied when a parolee is notified of the charges against him and is afforded a preliminary hearing to determine probable cause and a full hearing to determine actual revocation. Illinois' parole revocation process (730 ILCS 5/3-3-9) complies with that framework, and it is undisputed that for both of his arrests Knox was afforded the two hearings and received all of the process that he was due. Hence his claim under the Due Process Clause cannot survive summary judgment.

## Conclusions

Walker's acts in issuing the parole violation warrants are entitled to absolute immunity from Knox's Section 1983 suit.

Walker's motion for summary judgment is therefore granted, and Knox's Fourth Amendment claims against him are dismissed.

Although Knox's challenge to the April 9 arrest is not barred by <u>Heck v. Humphrey</u>, he has failed to raise a material (that is, outcome-determinative) issue of fact about Smith's April 3 request for the warrant. Thus Smith's motion for summary judgment is granted as to the April 9 arrest.

In contrast, the absence of a record of Smith's contact with Knox during his May release does raise a question of material fact as to the accuracy of Smith's May 29 violation report. Because a reasonable jury could infer that she lacked sufficient cause to procure the warrant and that she accordingly caused Knox to be arrested in violation of the Fourth Amendment, Smith's motion for summary judgment is denied as to Knox's claim of unreasonable seizure based on the June 22 arrest.

Lastly, Knox has failed to show a genuine issue of material fact that he was denied his due process rights under the Fourteenth Amendment. Both Smith and Walker are entitled to judgment as a matter of law on that claim.

One final matter bears mention, though (or perhaps because) it has not been addressed by the litigants). No view is expressed here as to the appropriateness or inappropriateness of any Rule 54(b) determination as to any claim that has been

resolved as a final matter by this opinion.

_____

Milton I. Shadur
Senior United States District Judge

Date: November 25, 2002